IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:19-cv-02292-RBJ

CTF BM OPERATIONS LTD.,

    Plaintiff,

v.

DELTA ENTERPRISE SOLUTIONS LLC,

    Defendant.

---

## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

---

Plaintiff CTF BM Operations LTD. ("CTF") submits this Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56(a):

## I. INTRODUCTION

Defendant Delta sought to commence an arbitration against CTF in Denver for alleged breach of contract claims stemming from a 2013 contract (the "2013 Contract") between Baha Mar Ltd. ("BML") and AKA Enterprise Solutions Inc. ("AKA"). Delta is purportedly a successor-in-interest to AKA. CTF, a Bahamian company which has never had any common parent or other connected ownership with BML, seeks a declaratory judgment that it is not bound by the 2013 Contract and, therefore, cannot be forced to arbitrate any claims at JAMS in Denver.

BML sought to develop a resort named Baha Mar located in Nassau, The Bahamas (the "Resort"). BML became insolvent and was placed into provisional liquidation in September 2015 and receivership in October 2015. Liquidators were appointed to manage BML's unsecured assets

and dissolution (collectively, the "Liquidator"), and Receiver-Managers were appointed to manage BML's secured assets (collectively, the "Receiver"). As an unsecured creditor, Delta (a) received written notice from the Liquidator of the commencement of the liquidation proceeding for BML (the "Liquidation Proceeding"), (b) filed a claim with the Liquidator in 2016 for unpaid fees owed by BML for services provided to BML by Delta under the 2013 Contract (the "2016 Delta Claim"), (c) settled the 2016 Delta Claim on March 14, 2017 with Perfect Luck Claims Limited, a company created by the Liquidators for the sole purpose of purchasing and settling certain unsecured creditor claims (**Ex. 1**, March 14, 2017 Deed of Assignment; **Ex. 2**, Depo. Kahn at p. 11, ll. 2-12; p. 23, l. 20-p. 25, l. 25), and (d) received payment for the 2016 Delta Claim on April 26, 2017. *Id.*

Delta sets forth wholly unsupported assertions that (a) CTF "assumed" or implied through conduct that it agreed to be bound by the 2013 Contract after it signed an agreement with the Receivers to purchase the Resort in November 2016, and (b) CTF should be held liable for a breach of a non-compete clause in the 2013 Contract. CTF was never a party to the 2013 Contract and CTF never agreed to be bound by the terms of the 2013 Contract in writing or otherwise. Moreover, the 2013 Contract was not included in the assets transferred by the Receiver to any of the Perfect Luck Companies (as defined below), and CTF never, at any time, otherwise agreed to be bound to its terms. In fact, CTF was not incorporated until October 2016, some three (3) years after the execution of the 2013 Contract. *See* **Ex. 3,** Affidavit of Bradley D. Hornbacher regarding incorporation of CTF and asset transfer during liquidation.

## II. STANDARD OF REVIEW

CTF seeks a declaratory judgment that it is not bound by the terms of the 2013 Contract and, therefore, cannot be forced to arbitrate any claims related to the 2013 Contract at JAMS in

Denver pursuant to such contract. The Declaratory Judgment Act, provides that "any court of the United States, upon the filing of an appropriate pleading, *may* declare the rights and other legal relations of an interested party seeking such declaration, whether or not further relief could be sought." 28 U.S.C. 2201. A declaratory judgment action is a proper judicial resolution of a case or controversy and not an advisory opinion when it results in settling some dispute which affects the behavior of the defendant towards the plaintiff. *See Jordan v. Sosa,* 654 F.3d 1012, 1025 (10th Cir. 2011).

Herein CTF seeks summary judgment on its request for declaratory judgment as the undisputed facts show that it is not bound by the terms of the 2013 Contract and cannot be compelled to arbitrate any claims related to such contract. The court "shall grant summary judgment" if the moving party shows that there is no genuine dispute as to any material fact. Fed. R. Civ. P. 56(a). An issue of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party" on the issue. *Thomas v. Metro. Life Ins. Co.,* 631 F.3d 1153, 1160 (10th Cir. 2011). An issue of fact is material "if under the substantive law it is essential to the proper disposition of the claim." *Id.* Once a motion for summary judgment has been properly supported, the burden shifts to the nonmovant to show, by admissible evidence, that summary judgment is not proper. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323-24 (1986). The nonmoving party must show the existence of a genuine dispute of a material issue by going beyond the allegations in its pleading and providing "specific facts showing there is a genuine issue for trial." *Id.* at 324. Conclusory statements based merely on conjecture, speculation, or subjective belief are not competent summary judgment evidence. *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004). There is no issue of material fact if the evidence presented demonstrates that the

moving party must prevail as a matter of law. *Anderson v. Liberty Lobby,* 477 U.S. 242, 248-49 (1986); *Stone v. Autoliv ASP, Inc.,* 210 F.3d 1132, 1136 (10th Cir. 2000); *Carey v. U.S. Postal Service,* 812 F.2d 621, 623 (10th Cir. 1987).

## III. STATEMENT OF UNDISPUTED FACTS

A. **Background Re the Bankruptcy and Receivership of BML**

1. **U.S. Bankruptcy Petition and Bahamian Receivership**. BML was a party to the 2013 Contract and was the entity which originally owned the Resort. It became insolvent and, through a U.S. affiliate, Northshore Mainland Services, Inc., filed a petition for Chapter 11 bankruptcy in Delaware by which it sought to include BML as an affiliate (the "Petition"). Following dismissal of the Petition in July 2015, BML was placed into liquidation in The Bahamas around September 2015. *See* **Ex. 4,** Receivership pleading at CTF 000115-122. In October 2015, a Receiver was appointed (the "Receiver") at the request of Export-Import Bank of China ("CEXIM"), the secured lender for the Resort, to oversee the assets of BML that provided security for a large loan from CEXIM to BML and its affiliates. *See* **Ex. 3**, Affidavit of Bradley D. Hornbacher, paragraph 10.

2. **Spinoff of BML Secured Assets in the Receivership Proceeding.** In connection with the Receivership Proceeding, the Receiver created new special purpose entities (collectively, the "Perfect Luck Companies") to acquire some but not all of the secured assets of BML and its affiliates that were included in the Receivership Proceeding (collectively, the "BML Entities"). This acquisition was accomplished through an Asset Transfer Agreement dated September 2, 2016. **Ex. 5** (the **"**Asset Transfer Agreement"). Pursuant to the express terms of the Asset Transfer Agreement, no liabilities of any of the BML Entities were transferred to any of the Perfect Luck

4

Companies. The Perfect Luck Companies did not, in the Asset Transfer Agreement or otherwise, opt to take over the 2013 Contract or any other agreement between BML and AKA (or Delta), and there was no reference to the 2013 Contract, Delta or AKA in the Asset Transfer Agreement. **Ex. 6**, Depo. Burge at p. 54, l. 12 – p. 55, l. 4; **Ex. 7**, Depo. Murgia at p. 24, l. 22 – p. 25, l. 13, p. 104, l. 4 – p. 107, l. 21. Furthermore, as described above, there was no merger, succession or common legal ownership or other relationship between BML or any of its affiliates and CTF or any of the Perfect Luck Companies. **Ex. 6,** Depo. Burge, p. 102, ll. 3-15; **Ex. 7**, Depo. Murgia at p. 116, ll. 5-10.

      **B.**      <u>**The 2013 Contract and the Claims That Delta Seeks to Enforce Against CTF**</u>

      3.      On July 28, 2018, Delta commenced an arbitration at JAMS Denver against BML for an alleged breach of the 2013 Contract (the "Denver Arbitration"). **Ex. 8,** Demand for Arbitration Form and Amendment (the "Original Petition"). David Kahn is the sole owner and member of Delta. **Ex. 2**, Kahn Depo. at p. 7, l. 18 -p. 8, l. 4. On October 18, 2018, Delta sought to add CTF to the Denver Arbitration for the same alleged breaches of the 2013 Contract (the "Amended Petition"). *Id.* In both the Original and Amended Petitions, Delta claimed it provided software hosting services, and software consulting services, related to the accounting software and the Microsoft GP software program used by BML at the Resort.

      4.      The sole parties to the 2013 Contract are AKA and BML. There are no amendments or assignments of the 2013 Contract and there is no mention of CTF in that contract. The 2013 Contract recites that it is for all "services performed" and "all software and other items licenses or sold" by AKA to BML. **Ex. 9,** 2013 Contract produced by Delta at Delta 001-008. The 2013 Contract does not specify pricing or specific services. *Id.*

5.      The 2013 Contract was signed on July 23, 2013 by Doug Ludwig, who at the time was Chief Financial Officer of BML and who left BML before its 2015 bankruptcy. In its disclosures in this case, Delta did not produce a copy of the 2013 Contract that was signed by AKA or which identifies the party on behalf of whom Mr. Ludwig signed the agreement. **Ex. 2**, Depo. Kahn at p. 130, l. 18 – 131, l. 8; **Ex. 7**, Depo. Murgia at p. 36, ll. 3-23. Mr. Ludwig was never employed by CTF. **Ex. 3,** Affidavit of Bradley D. Hornbacher. As indicated above, CTF was not formed until October 2016, CTF did not exist at the time of the 2013 Contract was executed by Mr. Ludwig, CTF never subsequently signed the 2013 Contract (**Ex. 9**, 2013 Contract), and CTF never otherwise agreed to be bound by the terms of the 2013 Contract. **Ex. 6,** Depo Burge at p. 77, l. 11-21, p. 88, ll. 5-16; **Ex. 7**, Depo. Murgia at p. 94, l. 14 – p. 96, l. 7.

6.      Delta admits that (a) CTF is not a party to or a signatory to the 2013 Contract, (b) there is no writing in which CTF agreed to be bound by the terms of the 2013 Contract. **Ex. 2**, Depo. Kahn at p. 85, ll. 3-9; p. 140, ll.14-17 (admitting the only agreement signed by CTF is the 2018 CTF Contract); **Ex. 2**, Depo. Kahn at p. 10, ll. 14-18 (admitting no documents show CTF agreed to the 2013 Contract); and (c) no one at CTF ever made any oral statement agreeing to be bound by or "assume" the 2013 Contract. **Ex. 2**, Depo. Kahn at p. 100, ll. 7-18.

7.      Moreover, Delta cannot provide any date upon which it claims CTF allegedly agreed to be bound to the terms of the 2013 Contract. **Ex. 2**, Depo. Kahn at p. 11, ll. 12-16 (admitting no one at CTF explicitly agreed to be bound by the 2013 Contract).

8.      Delta did not provide the 2013 Contract to CTF, CTF was unaware of its specific terms, and had not seen the 2013 Contract prior to the commencement of the Denver JAMS arbitration. **Ex. 6**, Depo. Burge at p. 19, l. 21 – p. 20, l. 2 (first saw 2013 Contract two weeks ago);

**Ex. 10**, Depo. Winder p. 15, ll. 11-16 (unaware of any physical contract between Delta and BML); p. 52, ll. 4-8 (not aware of any written contract); **Ex. 7**, Depo. Murgia at p. 35, ll. 1-16.

### C. Delta's Allegations of Breach of the 2013 Contract

9. Delta claims that BML breached the 2013 Contract because a former contractor of Delta, Erik Nylander, consulted with BML regarding a software upgrade in or around February 2017 **Ex. 8**, Arbitration Demand.

10. Delta became aware that Mr. Nylander was consulting/working with the Resort in some capacity in February 2017. **Ex. 11**, February 26, 2017 email; **Ex. 2**, Depo. Kahn at p. 144, ll. 10-19. Thus, to the extent that use of Nylander in any capacity was a breach of the 2013 Contract, Delta was aware of such breach <u>before</u> it submitted/settled its claims against BML in the Liquidation Proceeding.

### D. CTF's Interaction with Delta

11. In June 2017, after CTF became involved in the Resort, Brian Winder, a database administrator employed by CTF who was working on updating the accounting system, contacted Delta about obtaining registration keys for the 2016 version of the license for the Microsoft Dynamics GP software. **Ex. 10**, Depo. Winder at p. 8, ll. 11-13, p. 43, l. 4 – p. 44, l. 7; **Ex. 12**, Emails at CTF 000338.

12. In June 2017, Delta notified CTF that BML, "**at the time of its bankruptcy,**" had not renewed the license for the Microsoft Dynamics GP software and that the registration keys for the prior enhancement of existing version of that software would expire on June 30, 2017. *Id.;* **Ex. 2**, Depo. Kahn at p. 45, l. 5-p. 46, l. 16 (verifying email).

13. To keep the Resort's accounting system up and running, CTF asked Delta to assist it with the procurement of new registration keys. On July 1, 2017, Mr. Kahn of Delta set forth in writing the specific terms of a proposed new agreement with CTF to provide this assistance, which included a retainer, a change of address for the hosting invoices, and an advance payment for hosting renewals. **Ex. 13**, Affidavit of Haley Kemp & **Ex. 14**, July 1, 2017 and July 21, 2017 email; **Ex. 2**, Depo. Kahn, p. 74, l. 19 - 22**.** He commented further on this agreement by email on July 21, 2017, but neither of these emails nor any other contemporaneous emails from either Delta or Mr. Kahn, made any reference to BML or the 2013 Contract. *Id.*

14. At the time the proposed terms of the new agreement were discussed in July 2017, CTF told Delta all invoices would need to be issued in the name of CTF and not BML. **Ex. 13**, Affidavit of Haley Kemp & **Ex. 15**, June 30, 2017 email. Thereafter, all invoices submitted by Delta to CTF were issued in the name of CTF and utilized a different client ID number than the ID number used for BML under the 2013 Contract. **Ex. 16**, Invoices showing billing to CTF versus BML.

15. Delta invoiced CTF for hosting services from June 2017 into 2018 and there is no dispute that those invoices were paid by CTF as opposed to BML. *Id.* At no time did any invoice or correspondence related thereto sent by Delta to CTF reference the 2013 Contract. *Id.*

## ARGUMENT

A. **CTF is not bound by any obligations under the 2013 Contract.**

CTF is not a party to and not obligated to the terms of the 2013 Contract, and Delta has not produced any documents, testimony, or other evidence that supports its claim that CTF has

assumed in writing or otherwise agreed to be bound by the terms and conditions of the 2013 Contract.

Rather, Delta claims that CTF should be deemed to have assumed the 2013 Contract because after BML's liquidation: 1) CTF became involved in the operation of the Resort, and 2) in 2017 CTF began receiving the same services from Delta that AKA had been previously provided to BML and CTF paid those invoices (i.e. the invoices were issued to CTF and not BML), and 3) alleged statements by CTF employees that Delta claims show that CTF assumed the 2013 Contract. These arguments are completely unsupported by the evidence and do not support a finding that CTF agreed to be bound by the specific terms of the 2013 Contract, including specific terms therein related to non-solicitation, non-compete, damages and arbitration.

There is no evidence, express or implied, that CTF agreed to be bound to the 2013 Contract. Under Colorado law any contract between parties, whether express or implied requires an offer, acceptance and consideration. *See, e.g., Marquardt v. Perry*, 200 P.3d 1126, 1129 (Colo. App. 2008); *Walshov v. Zabors*, 178 F.Supp.3d 1071, 1081 (D. Colo. 2016).

A valid contract between parties, in any form written, oral, implied or otherwise, requires <u>proof</u> of a meeting of the minds as to all essential terms. *See, e.g., Agritrack, Inc. v. DeJohn Housemoving, Inc.*, 25 P.3d 1187, 1192 (Colo. 2001), *as modified on denial of reh'g* (Colo. July 2, 2001); *Am. Family Mut. Ins. Co. v. Tamko Bldg. Prod., Inc.*, 178 F. Supp. 3d 1121, 1125 (D. Colo. 2016); *I.M.A., Inc. v. Rocky Mountain Airways, Inc.*, 713 P.2d 882, 887 (Colo.1986) (en banc) (must show meeting of the minds for implied contract); *A.R.A. Mfg. Co. v. Cohen*, 654 P.2d 857, 859 (Colo.App.1982) (same). !!

Here, there is simply no evidence of a meeting of the minds between CTF and Delta as to the essential terms of the 2013 Contract or any express or implied assumption of the 2013 Contract by CTF. There is no legal support for the argument that merely because CTF, a separate entity from BML, which was never affiliated with or under common control with BML, became involved in the Resort following BML's receivership, that CTF should be deemed to have agreed to be bound by any contract between Delta (AKA) and BML. Moreover, the evidence proves that Delta knew its relationship with CTF was a new and distinct one from its relationship with BML, as Delta made and settled a claim against BML in the receivership process, and then began discussing a new contract with CTF.

CTF's use of Delta's services in 2017 does not prove any agreement to be bound by any of the terms contained in the 2013 Contract between Delta (AKA) and BML, including those terms related to competition, solicitation, arbitration or liquidated damages which Delta now wishes to enforce against CTF in the Denver arbitration. In late June 2017, after CTF began its involvement with the Resort, CTF asked Delta to help it obtain the 2016 registration keys for its Microsoft Dynamics GP software, in order to avoid a disruption of service. Delta acknowledged that BML had not obtained new registration keys <u>because it went into "bankruptcy"</u>. Delta agreed to assist CTF with getting new registration keys and set forth itself, <u>in writing</u>, through its owner and only member David Kahn the terms and conditions for providing that assistance. Kahn's July 2017 email sets forth specific terms of a new agreement between Delta and CTF to assist CTF in procuring the new registration keys. The discussions related to this new agreement did not involve any of the same management personnel previously employed by BML. **Ex. 7**, Depo. Murgia at p. 113, l. 22 – p. 114, l. 9. Thereafter, CTF paid invoices from Delta for software registration and

hosting services. CTF informed Delta the invoices had to be issued to CTF, not BML. Delta issued the invoices to CTF using a new customer ID that was different than the ID that was used for BML (CTF001 versus BAH001). Delta was aware that CTF was a separate and distinct legal entity and that it was not BML. Further, none of the invoices issued to CTF reference any general terms and conditions related to the 2013 Contract. In fact, no correspondence between Delta and CTF referenced the 2013 Contract and Delta never provided the 2013 Contract to CTF.

There is no evidence that CTF agreed to be bound by the 2013 Contract. There is no evidence of (a) a meeting of the minds between Delta and CTF in 2017 concerning any of the non-compete, non-solicitation, arbitration, or liquidated damages provisions that were included in the 2013 Contract, or (b) an agreement by CTF to take an assignment of or assume BML's obligations under the 2013 Contract. A valid contract between two parties requires evidence of a meeting of the minds on essential terms. There is only evidence that CTF utilized Delta's services for a period that first commenced in 2017 and prior to signing the September 3, 2018 contract[1], pursuant to invoices submitted by Delta to CTF (and not BML) for those services. None of the documents or invoices related to the services commenced by Delta for CTF in 2017 reference the 2013 Contract or show any agreement by CTF to be bound or assume by the terms of the 2013 Contract, including any agreement to arbitrate disputes in Denver.

Delta presented in its responses to written discovery that three employees of CTF confirmed an assumption by CTF of the 2013 Contract. These conclusory allegations are not

---

[1] CTF entered into a formal written agreement with Delta on September 3, 2018 which was terminated six weeks later. This agreement is attached to CTF's Complaint. It is not in issue in this motion as the 2018 agreement does not involve the time period in which Delta claims a breach and requires arbitration of any disputes in New York, NY, which has not been initiated by Delta.

11

supported by any evidence. First, Delta claims Haley Kemp told David Kahn in a telephone call that CTF's policy was to assume BML's current contracts. In reality, Ms. Kemp simply said that to the best of her knowledge, some vendor relationships were continued after CTF became involved in the operation of the Resort in April 2017. However, she made no statement regarding assumption of any pre-existing BML contracts, including any existing contract Delta may have had with BML. Ms. Kemp did not even work for CTF at the time of the telephone call, never served as an officer or director of CTF, had no knowledge of the 2013 Contract, had never seen the 2013 Contract, and had no role in the negotiation or execution of contracts on behalf of CTF. **Ex. 13**, Affidavit of Haley Kemp. This is certainly not a statement that shows a meeting of the minds occurred or that CTF ever intended to be bound by or assume a contract of which it had no prior knowledge.

Second, Delta also claims that in separate conversations between David Kahn and Brian Winder and Nicola Murgia, Winder and Murgia agreed to "honor" the existing 2013 Contract. David Kahn testified, however, that he cannot recall anything specific about these alleged conversations or what was said. **Ex. 2**, Depo. Kahn at p. 192, l. 18 - p. 197, l. 4. Further, both Winder and Murgia denied under oath ever saying that CTF would be bound by or honor the 2013 Contract. Neither Winder nor Murgia have ever been officers or directors of CTF, and both Winder and Murgia confirmed that they did not have the authority to enter into contracts on behalf of CTF. Furthermore, both were unaware, and never saw, the 2013 Contract between BML and Delta (AKA). **Ex. 10**, Depo. Winder at p. 19, ll. 14-19, p. 9, l. 22 – p. 10, l. 6, p. 56, ll. 2-4 and **Ex. 7**, Depo. Murgia at p. 13, l. 22 – p. 14, l. 4.

The undisputed evidence shows that there was no agreement or meeting of the minds between CTF and Delta or other evidence that supports that CTF intentionally or impliedly agreed to be bound by or assume the specific terms of the 2013 Contract between BML and Delta (AKA). Rather, the undisputed evidence shows that prior to the signing of the 2018 Contract by CTF and Delta, CTF and Delta agreed that Delta would help CTF obtain 2016 registration keys for upgrades to the accounting software and would provide hosting services for the Microsoft Dynamics GP software, which agreements were memorialized in emails. Fees for these services were billed to CTF under invoices issued by Delta using a different name (CTF rather than BML) and a different customer number than the one used for BML under the 2013 Contract. If CTF and Delta had a meeting of the minds that CTF would just agree to be bound by the terms of the 2013 Contract, there would have been no need for the subsequent written 2018 Contract between the parties.

### B. The 2013 Contract is not fully executed, does not include BML, Delta or CTF as parties and is not enforceable here.

The 2013 Contract that Delta seeks to enforce provides that it is an agreement entered into by and between AKA and "the party identified in the Section titled "Acceptance." **Ex. 9**, at DELTA 0001, § 1.1. This agreement was signed by Doug Ludwig CFO on July 23, 2013. *Id.* at 0006. Delta asserts that Doug Ludwig signed the 2013 Contract on behalf of BML, although no such entity is identified in the Acceptance section or anywhere else in the document. Additionally, the 2013 Contract is not signed anywhere by AKA, and Delta is not referenced anywhere in the contract. It is undisputed that CTF is not a party to the 2013 Contract and did not sign the 2013 Contract. Delta admits there is no written documentation that supports its claim that CTF agreed to be bound by the specific terms and conditions of the 2013 Contract. Under these circumstances, the 2013

Contract is not enforceable against CTF, and CTF cannot be deemed to have expressly or impliedly "assumed" or otherwise agreed to be bound by any of the terms of the 2013 Contract.

    **C.**    **Any claims Delta had under the 2013 Contract had to be and were asserted in the Liquidation.**

Delta cannot circumvent the liquidation of BML and Delta's failure to properly pursue a claim therein, with unsupported argument that CTF assumed the Contract and BML's obligations thereunder. Under the Bankruptcy Code, a claim is defined as any right to payment, regardless of whether it is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured. *See, e.g., 11 U.S.C. § 101(5)*; The proof of claim (or interest), Bankr. Prac. for Gen. Practitioner § 7:1. If one fails to timely file a claim under a receivership/bankruptcy, the claim may be disallowed.

In 2015, BML entered into receivership by orders of the Supreme Court of the Bahamas. The Resort was closed and not operational. Joint receivers and managers were appointed to manage all of the assets, property and undertakings of BML pending its liquidation and dissolution. Delta was notified of the liquidation and the receivership and, in March 2017 (the "Liquidation Claim"), presented a claim therein for amounts due to Delta from BML under the 2013 Contract. Delta was paid a settlement on April 26, 2017 in exchange for assignment of such claims to Perfect Luck Claims, an entity created by the Liquidators to resolve claims against BML. **Ex. 1**.

On or before February 26, 2017, and prior to filing the Liquidation Claim, Delta was aware and had notice of a claim for an alleged breach of the 2013 Contract related to services performed by Mr. Nylander for the Resort. Such notice is evidenced by Mr. Kahn's own email of that date. Delta received such notice prior to (a) the filing of its Liquidation Claim, (b) the consummation of the settlement of that claim on April 26, 2017, and (c) the commencement of CTF involvement in

14

the operations of the Resort on April 21, 2017. The 2013 Contract between Delta and BML was extinguished in the liquidation and was not assigned under the Asset Transfer Agreement to Perfect Luck (or CTF).[2] It is unclear why Delta failed to raise its breach allegation in the liquidation but, Delta should not be allowed to circumvent the claims procedures promulgated by the Supreme Court of the Bahamas in the liquidation proceedings related to BML with unsupported allegations of CTF's alleged assumption of BML's obligations under the 2013 Contract.

## CONCLUSION

Plaintiff CTF is entitled to a declaratory judgment that it (a) did not agree to be bound by the 2013 Contract, and (b) cannot be compelled to appear in Denver for an arbitration involving disputes about any alleged breach of an agreement to which it (i) was not a party and (ii) did not expressly or implied agree to be bound. There is no evidence of any actions by CTF which could be reasonably construed to evidence any intent by CTF to agree to the terms of or be bound by the 2013 Contract between BML and Delta or any or the essential terms thereof, including non-solicitation, mandatory arbitration in Denver, Colorado, and liquidated damages. Only after Delta realized that it would be unable to recover damages against BML for alleged breaches under a non-hire/non-solicit clause in the 2013 Contract did it attempt to cooper up a similar claim against CTF, which is not a party to and which did not assume the 2013 Contract, in the Denver arbitration that Delta originally commenced solely against BML. Even if Delta proves that (a) it and BML were parties to the 2013 Contract, and (b) BML breached its terms, CTF is not a successor entity to

---

[2] Although outside the declaratory relief requested herein, Delta claims the 2013 Contract was breached via CTF's use of his employee Erik Nylander, which Delta became aware of in February 2017. Under the 2013 Contract, no claim may be brought more than one year after the cause of action accrues. The JAMS action to compel arbitration was filed in July 2018, thus any claim against CTF based upon its alleged assumption of the 2013 Contract and such use of Mr. Nylander, if valid, would be time barred.

BML. In addition, CTF did nothing to agree to, take over or assume the 2013 agreement Delta claims it had with a liquidated entity, BML, and Delta failed to seek leave from the Supreme Court of The Bahamas to pursue a claimed breach of a non-hire/non-solicit clause in the 2013 Contract as required by the terms of BML's liquidation proceedings in the Bahamas. Delta was aware of CTF as a new entity with whom it began dealing and invoicing in 2017, shortly after Delta settled its claim with BML's receivers. Simply put, there is no evidence that CTF expressly or impliedly agreed to assume any of the terms of the 2013 Contract or otherwise agreed to be bound by those terms. Therefore, Delta's claim against CTF for breach of the 2013 Contract, and its attempt to compel CTF to arbitrate such claims under terms of that agreement at JAMS in Denver are without merit.

WHEREFORE, CTF respectfully requests this court grant summary judgment in its favor and enter a Declaratory Judgment that it is not a party to or bound by the terms of the 2013 Contract between AKA/Delta and BML, including any obligation to arbitrate such claims at JAMS in Denver.

Respectfully submitted this 14th day of August, 2020.

                                                **BUTLER SNOW LLP**

                                                *s/ David G. Mayhan*
                                                David G. Mayhan
                                                Sarah Smyth O'Brien
                                                1801 California Street, Suite 5100
                                                Denver, Colorado 80202
                                                Telephone: (720) 330-2300
                                                Facsimile: (720) 330-2301
                                                David.Mayhan@butlersnow.com;
                                                Sarah.OBrien@butlersnow.com

                                                *Attorneys for Plaintiff*
                                                *CTF BM Operations LTD*

                                                [Original Signature on File at the Office of Butler Snow LLP]

**CERTIFICATE OF SERVICE**

      I certify that on this 14th day of August, 2020, a true copy of the foregoing was electronically filed with the Clerk of the U.S. District Clerk using the ECF system, which will send notice to all attorneys of record.

      *s/ Gloria Anzar*
      Gloria Anzar